ORFINGER, Judge.
Mutual Fire, Marine and Inland Insurance Company, (Mutual Fire) appeals from a summary final judgment determining that appellees were entitled to insurance coverage, a defense of all claims made against them and reasonable attorney’s fees and costs incurred in defense of those claims and in successfully prosecuting its claim for coverage under the “claims made” policy issued by Mutual Fire. We affirm.
Both parties moved for summary judgment and agreed that the facts in the case are undisputed. During the year 1981, Fred S. James & Co. of Texas, Inc. (James), an insurance producer, established a professional liability insurance program for the American Council of Independent Laboratories (ACIL) of which appellee, Florida Testing & Engineering Co. (Florida Testing) of Ft. Lauderdale, Florida, was a member. Through this program, a “claims made” liability insurance policy was issued to Florida Testing on February 2, 1982, by Northeastern Fire Insurance Company of Pennsylvania (Northeastern). In the summer of 1982, James determined that Northeastern was experiencing financial difficulties, and arranged for Mutual Fire to take over the master policy for ACIL. In applying for the new policy, Florida Testing requested that a related but independent corporation, Florida Testing of Daytona (Day-tona) be included as an insured. At the same time, it disclosed to Mutual Fire the existence of a potential claim against Day-tona for soil tests which Daytona had performed for an addition to the Flagler County Courthouse.
As a result, James, on behalf of Mutual Fire, issued a policy to Florida Testing, which contained the following provisions relevant to this controversy:
[[Image here]]
*362 [[Image here]]
During the policy term, Flagler County filed suit for professional negligence against Florida Testing, Daytona, and J. V. Winterholler, as president of both companies. Mutual Fire denied coverage as to both Florida Testing and Daytona for work performed on the Flagler County Courthouse. Appellees argued below that the exclusion in Endorsement No. 3 clearly applied only to Daytona, or alternatively, that the endorsement was sufficiently ambiguous so as to permit extrinsic evidence of the parties’ intent. The trial court found the endorsement to be ambiguous, permitted the introduction of extrinsic evidence, and found for appellees and against Mutual Fire. We agree that the endorsement, as written, is ambiguous and that the trial court properly considered the undisputed evidence that Daytona was the only named insured intended to be excluded from coverage for this particular claim.
Mutual Fire’s motion for summary judgment asserts: “The policy of insurance ... expressly contained a provision excluding any and all claims related to work conducted by the insureds on the Flagler County Court House addition” (emphasis supplied). If this were indeed the language of the policy, we would agree that the policy was clear, unambiguous and not subject to extrinsic evidence as to its intended meaning. The language of the policy, however, is not as clear as Mutual Fire would have us believe.
In paragraph 1 and 2 of the policy, Florida Testing is designated as the named insured. Paragraph 1 also refers to Endorsement No. 3. Under the endorsement, Daytona is also designated as a named insured. The endorsement then provides:
the liability afforded under this policy shall not apply to any claim ... between the named insured [singular] and the County Commissioner [sic] of Flagler County as respects the insured’s [singular] work performed on the Flagler County Courthouse. [Emphasis added].
Because only the singular “insured” is used, this language, chosen by the insurance company’s agent who prepared the endorsement, is at the very least ambiguous as to which one of the named insureds it refers to. If the endorsement was intended to apply to any named insured or to all, it could easily have been worded to say so.
It is “a well established principle of law that if a written contract is ambiguous so that the intent of the parties cannot be *363 understood from an inspection of the instrument, extrinsic or parol evidence of the subject matter of the contract, of the relation of the parties, and of the circumstances surrounding them when they entered into the contract may be received in order to properly interpret the instrument.” Lemon v. Aspen Emerald Lakes Associates, Ltd., 446 So.2d 177, 180 (Fla. 5th DCA 1984). The agent who prepared the endorsement testified that it was intended to apply only to the work performed by Day-tona. In addition, the letter from James which accompanied the new policy states: “It is to be understood that there will be no claim honored between Florida Testing of Daytona and the County Commissioner [sic] of Flagler County, regarding your project on the Flagler County Courthouse.” Having correctly determined that the endorsement was ambiguous, the trial court was justified in relying on this undisputed evidence in determining the intent of the parties.
AFFIRMED.
COBB, J., concurs.
COWART, J., dissents with opinion.